1
2
3
4
5
6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

7
8
9
10
11
12
13
14
15
16

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>JOHN L CABRAL, JANET M.<br>CABRAL, STATE OF CALIFORNIA<br>FRANCHISE TAX BOARD, STATE OF<br>CALIFORNIA EMPLOYMENT<br>DEVELOPMENT DEPARTMENT, SAN<br>JOAQUIN VALLEY HAY GROWERS<br>ASSOCIATION, C.L. BRYANT INC.<br>DISCOVER BANK, NATIONAL CREDIT<br>ACCEPTANCE, INC., COUNTY OF<br>MERCED, DCSS,<br><br>                    Defendants. | 1:07-CV-01741-OWW-DLB<br><br>MEMORANDUM DECISION AND ORDER<br>RE GRANTING DEFENDANT<br>CALIFORNIA FRANCHISE TAX BOARD<br>AND CALIFORNIA EMPLOYMENT<br>DEVELOPMENT DEPT. MOTION TO<br>DISMISS (Doc. 29) AND GRANTING<br>UNITED STATES MOTION TO<br>DISMISS (Doc. 41) |

17

**1.  Introduction**

18
19
20
21
22
23
24
25

Defendant California Franchise Tax Board ("FTB") and California Employment Development Department ("EDD") move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), crossclaims brought by Defendant John L. Cabral ("Cabral") for lack of subject matter jurisdiction.  Plaintiff United States moves to dismiss, pursuant to Fed. R. Civ. P. 12(h)(3), Cabral's counterclaims for lack of subject matter jurisdiction.  Oral argument was heard on August 4, 2008.

26

**2.  Procedural History**

27
28

The United States filed a complaint on November 30, 2007. (Doc. 1, Complaint).  EDD filed an answer to the Complaint on

March 12, 2008.  (Doc. 11, EDD Answer).  FTB filed an answer to the Complaint on March 18, 2008.  (Doc. 18, FTB Answer). Defendant Cabral filed an answer with counterclaims and crossclaims against Plaintiff United States and Co-Defendants FTB, EDD and Janet M. Cabral on May 12, 2008.  (Doc. 27, Cabral Answer).  FTB and EDD jointly filed a motion to dismiss for lack of jurisdiction against Defendant Cabral on May 21, 2008.  (Doc. 30, FTB and EDD Motion to Dismiss).  The Clerk entered the default of Defendant Janet M. Cabral on May 23, 2008 (Doc. 35), and of County of Merced, DCSS, Discovery Bank, and National Credit Acceptance, Inc. on June 5, 2008.  (Doc.  40).  The United States filed a motion to dismiss for lack of jurisdiction of Defendant Cabral's counterclaims on June 10, 2008.  (Doc. 41, US Motion to Dismiss).  Defendant Cabral filed an opposition to the US Motion to Dismiss on July 23, 2008.  (Doc. 46, Opposition - US).  Defendant Cabral filed an opposition to the FTB and EDD Motion to Dismiss on July 23, 2008.  (Doc. 47, Opposition - California).  The United States filed a reply to Defendant Cabral's Opposition - US on July 25, 2008.  (Doc. 48,  US Reply).

### 3.  Factual Background

A.  United States' Complaint

Plaintiff United States brings its Complaint in District Court pursuant to 26 U.S.C. § 7401, 7403, to reduce to judgment the outstanding federal tax assessments made against Defendants Cabral and Janet M. Cabral, and to foreclose federal tax liens, arising from federal tax liabilities against two parcels of property owned by Cabral and Janet M. Cabral, located in

1    Stanislaus County.[1]  (Complaint, ¶¶ 2, 3).[2]  The United States'

2    alleges that it sent and made timely notice and demands of tax

3    assessments, described in paragraph 13 to the Complaint to

4    Defendant Cabral which Defendant Cabral has neglected, failed or

5    refused to pay.  (Complaint, ¶¶ 14, 15).  The United States seeks

6    to reduce to judgment in its first cause of action the amount

7    outstanding.  The total balance of unpaid taxes alleged due and

8    outstanding, including accrued interest and penalties through

9    August 1, 2007, is $1,989,497.90.  (Complaint, ¶ 15).

10       Plaintiff United States seeks the same recovery from

11   Defendant Janet M. Cabral in its second cause of action, for a

12   total amount outstanding as of August 1, 2007, of $1,763,947.42.

13   (Complaint, ¶ ¶ 16-19).  The default against Janet M. Cabral has

14   been entered by the Clerk of the Court against Janet M. Cabral.

15   (Doc. 35, filed May 23, 2008).

16       Defendant Cabral and Janet M. Cabral are husband and wife,

17   jointly holding title to two parcels of real property, at issue

18   in the suit.  (Complaint, ¶ 6).  Defendant Cabral is a named

19   party to the suit because the United States asserts that it seeks

20   to reduce its tax assessments against him to judgment and because

21

22   _____

23       [1] Venue is proper in the Eastern District of California
     pursuant to 28 U.S.C. § 1391, 1396 because the liabilities
24   accrued and the subject property is located in this judicial
     district.  *See* Complaint, ¶ 5.

25

26       [2] The action is being brought with the authorization and at
     the request of the Chief Counsel, Internal Revenue Service, a
27   delegate of the Secretary of the Treasury of the United States,
     at the direction of the Attorney General.  *See* 26 U.S.C. § 7401,
28   7403, Complaint ¶ 3.

1    he may claim an interest in the subject property.  (Complaint, ¶

2    7).

3        The United States' alleges that Cabral and his wife Janet M.

4    Cabral acquired title to the real property at issue via a grant,

5    dated April 29, 1993, which was recorded in Stanislaus County on

6    May 17, 1993.  (Complaint, ¶ 9).

7        The United States seeks in its third cause of action to

8    foreclose its alleged federal tax lien on the subject property.

9    (Complaint, ¶ 23).

10       Other Defendants are named in the suit because the United

11   States' asserts they may claim an interest in the property

12   against which the United States seeks to foreclose its tax liens

13   (Complaint, ¶ 10):[3]

14              (1) <u>Defendant FTB</u> may claim a lien interest in the
                subject properties arising from unpaid state income
15              taxes liabilities of taxpayers.  (Complaint, ¶ 10(a));

16              (2) <u>Defendant San Joaquin Valley Hay Growers
                Association</u> may claim a lien interest in the subject
17              properties arising from unpaid judgment recorded on
                October 4, 1999.  (Complaint, ¶ 10(b));

18
                (3) <u>Defendant EDD</u> may claim a lien interest in the
19              subject properties arising from a 1999 Employment tax
                lien, recorded on March 29, 2000.  (Complaint, ¶
20              10(c)); and

21              (4) <u>Defendant C.L. Bryant, Inc.</u> may claim a lien
                interest in the subject properties arising from unpaid
22              judgment, recorded July 7, 2000.  (Complaint, ¶ 10(d)).

23       B.   <u>Defendant Cabral's Counterclaims/Crossclaims</u>

24

25   _____

26       [3] **The Clerk of the Court filed entry of defaults against the
     other named Defendants (a) Janet M. Cabral, (b) County of Merced,
27   (c) DCSS, (d) Discovery Bank and (e) National Credit Acceptance,
     Inc.  Their claims of lien interests in the subject property are
28   not at issue here.  *See* Docs. 35, 40.**

4

1   Defendant Cabral filed his Answer to the United States

2   Complaint and alleges two counterclaims against Plaintiff United

3   States pursuant to Fed. R. Civ. P. 13(a).[4]  Defendant asserts two

4   crossclaims against FTB and EDD pursuant to Fed. R. Civ. P.

5   13(g).[5]  (Cabral Answer, ¶¶ 7, 16 and 21).  Defendant also

6   alleges a crossclaim against Co-Defendant Janet M. Cabral

7   pursuant to Fed. R. Civ. P. 13(g).  (Complaint, ¶¶ 21, 23).

8   Defendant Cabral's first counterclaim/crossclaim is against

9   Plaintiff United States and Co-Defendants FTB and EDD for a

10  wrongful lien under 28 U.S.C. § 2410.  (Complaint, ¶ 7).

11  Defendant Cabral's second counterclaim/cross claim is

12  against Plaintiff United States and Co-Defendants FTB and EDD for

13  wrongful levy under 26 U.S.C. § 7426(a).  (Complaint, ¶ 17).

14  Defendant Cabral's third crossclaim is against Co-Defendant

15  Janet M. Cabral for breach of fiduciary duty.  (Complaint, ¶¶ 21,

16

17  ───────────────

    [4] **Fed. R. Civ. P. 13(a) states: Compulsory Counterclaim.**
18  **(1) In General. A pleading must state as a counterclaim any claim
    that--at the time of its service--the pleader has against an**
19  **opposing party if the claim:  (A) arises out of the transaction
    or occurrence that is the subject matter of the opposing party's**
20  **claim; and (B) does not require adding another party over whom
    the court cannot acquire jurisdiction.**
21

22

23  [5] **Fed. R. Civ. P. 13(g) states: Crossclaim Against a
    Coparty. A pleading may state as a crossclaim any claim by one**
24  **party against a coparty if the claim arises out of the
    transaction or occurrence that is the subject matter of the**
25  **original action or of a counterclaim, or if the claim relates to
    any property that is the subject matter of the original action.**
26  **The crossclaim may include a claim that the coparty is or may be
    liable to the cross-claimant for all or part of a claim asserted**
27  **in the action against the cross-claimant.**

28

23).

Defendant Cabral alleges under his first and second counterclaims/cross claims:

- **Cabral and his wife married in or about 1980. (Complaint, ¶ 9).**

- **Cabral is estranged from his wife Janet M. Cabral (Complaint, ¶ 9).**

- **Cabral and his wife started a farming business together in or about 1981 or 1982. The farming business remained a partnership between the two. (Complaint, ¶ 9).**

- **Cabral and his wife started a trucking business in or about 1985, which began as a partnership between the two, but was incorporated in or about 1996, where Janet M. Cabral was the Secretary. (Complaint, ¶ 9).**

- **At Janet M. Cabral's suggestion, the Cabral's switched their financial accounting systems for both businesses to a computer-based system in or about 1992. Cabral alleges that he does not have any experience in computers and lost his ability to review the financial performance of their businesses, therefore Janet M. Cabral assumed sole responsibility for all financial operations of the two businesses. (Complaint, ¶ 10).**

- **Janet M. Cabral handled all financial matters, including writing business checks, handling accounts receivables, reconciling accounts, paying business debts, preparing tax returns and depositing incoming checks. (Complaint, ¶ 11).**

- **Cabral alleges that his wife stole from the businesses and undertook unsecured debt obligations, at one time holding 100 credit cards using fictitious social security numbers and names. Cabral alleges his wife failed to pay many of the business' debts. (Complaint, ¶ 11).**

- **Defendant Cabral alleges his wife hid these fraudulent activities from him by having pertinent financial documents sent to an unaccessible address. (Complaint, ¶ 11).**

- **As a result of his wife's fraud, theft and financial mismanagement, the businesses failed and Federal and State taxes were unpaid. Cabral alleges his wife deliberately hid this information**

6

from him by having tax-related correspondence sent to an unaccessible address.  (Complaint, ¶ 13).

- Defendant Cabral alleges he did not suspect his wife's stealing until 1996, at which time they physically separated.  He claims his financial condition has prevented him from seeking a formal divorce.  (Complaint, ¶ 12).

- Defendant Cabral alleges he intends to pay all tax debts he legitimately owes and plans to file a petition with the Internal Revenue Service ("IRS") for innocent spouse relief pursuant to 26 U.S.C. § 6015 and with the FTB and EDD pursuant to Cal. Rev. & Tax. Codes §§ 18533 and 19006.  (Complaint, ¶ 14).

### 4.  Legal Standard

**A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Rule 12(b)(1), Federal Rules of Civil Procedure, provides for dismissal of action for "lack of jurisdiction over the subject matter."  Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction.  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  Rule 12(h)(3), Federal Rules of Civil Procedure, provides for dismissal of action if at any anytime the court "lacks subject-matter jurisdiction."  A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.  *General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-969 (9th Cir. 1981).  A challenge to subject matter jurisdiction may be facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004), *cert. denied,* 544 U.S. 1018 (2005):

In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the

7

**truth of the allegations that, by themselves,
would otherwise invoke federal jurisdiction.**

373 F.3d at 1038.   In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.   *Savage v. Glendale Union High School,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004); *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989).   "If the challenge to jurisdiction is a facial attack, *i.e.*, the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made."   *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *reversed on other grounds*, 963 F.2d 229 (9th Cir. 1992).   "The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction."   *Id.*

*Sovereign Immunity*

The United States, as a sovereign, is immune from suit unless it has waived its immunity.   *Department of Army v. Blue Fox*, *Inc.*, 525 U.S. 255, 260 (1999); *United States v. Mitchell,* 445 U.S. 535, 538 (1980).   A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim.   *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007).   "When the United States consents to be sued,

**8**

the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986).  A waiver of sovereign immunity must be unequivocally expressed.  *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).  The Government's consent to be sued must be construed strictly, in favor of the sovereign.  *Id.*

*Eleventh Amendment*

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any such suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by the Citizens or Subjects of any Foreign State.

U.S. Const., Amd. XI.  The Eleventh Amendment bars suits by private litigants for damages or retrospective injunctive relief in federal court in which a state is named as a defendant.  *See Franceschi v. Schwartz,* 57 F.3d 828, 831 (9th Cir. 1995).  "[T]he reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997).

### 5.  Legal Analysis

**A.  United States' Motion to Dismiss**

The United States moves under Fed. R. Civ. P. 12(h)(3) to dismiss, for lack of subject matter jurisdiction, Cabral's counterclaims.  The United States alleges that because Cabral seeks relief under 28 U.S.C. § 2410 (wrongful lien) and 28 U.S.C. § 7426 (wrongful levy), and the United States has not waived its sovereign immunity for such claims, the Court lacks subject

**9**

matter jurisdiction and Cabral's counterclaims should be dismissed.

1.   Section 2410 Claim

Cabral asserts a counterclaim for wrongful lien under 28 U.S.C. § 2410 and advances a claim for "innocent spouse relief" under 26 U.S.C. § 6015.[6]  The United States argues in its Motion to Dismiss that Cabral has not alleged a waiver of sovereign immunity.  The United States also argues that Cabral seeks to challenge assessment of taxes which is not permitted when bringing a claim under 28 U.S.C. § 2410 and this claim should be dismissed on this separate ground.

Section 2410 provides a limited waiver of sovereign immunity for quiet title actions.  Courts however only permit a taxpayer to challenge the procedural validity of a federal tax lien under § 2410, not the merits of the assessment.  *See Elias v. Connett*, 908 F.2d 521, 527-28 (9th Cir. 1990)*; Robinson v. United States*, 920 F.2d 1157, 1161 (3d Cir. 1990).  The merits of the assessment refers to "the liability for the amount, if any, of tax due." *Robinson*, 920 F.2d at 1161.  The taxpayer cannot contest the existence or validity of the tax assessment in an action under § 2410.  *Id.*

_____

[6]   Section 6015 is the "innocent spouse" provision which is an exception to general rule that, when taxpayers file a joint income tax return, they are jointly and severally liable for the amount of tax or any deficiency due.  The exception was enacted to prevent hardships that resulted when one spouse did not report income, thereby leaving the innocent spouse to pay the deficiency.  *See Grossman v. C.I.R.*, 182 F.3d 275, 278 (4th Cir. 1999).

1    Defendant Cabral asserts that he is not challenging the

2  merits of the tax assessment, and identifies two defenses:

3          (1) That liability for the assessment should be born by
           cross-defendant Janet Cabral; and
4
           (2) That Cabral himself never received notice of
5          assessment, required by 26 U.S.C. § 6212, nor did he
           receive any notice and demand required by 26 U.S.C. §
6          6331.

7  (Doc. 46, Opposition - US, 3:3-6.)  However, Cabral's first claim

8  that his wife, Janet Cabral is wholly responsible for "financial

9  accounting" and joint tax matters, (Complaint, ¶¶ 9-12), is an

10 argument that he is not liable for the taxes assessed and is a

11 challenge to "the liability for the amount, if any of tax due[]."

12 Therefore this defense is improper for purposes of bringing a §

13 2410 suit.  *Robinson*, 920 F.2d at 1161.  "[A] taxpayer may not

14 use a section 2410 action to collaterally attack the merits of an

15 assessment."  *Elias*, 908 F.2d at 527.  Cabral's assertion that he

16 is not liable for the lawful assessment, but his wife is, goes to

17 the "merits of [the] assessment rather than the procedural

18 validity of the IRS's lien."  *Id*.   Therefore, Cabral cannot

19 bring a section 2410 suit on this basis.

20   But to the extent Cabral is "challenging the procedural

21 lapses of the assessment under § 6203, 28 U.S.C. § 2410 does

22 serve as a waiver of sovereign immunity."  *Arford v. U.S.*, 934

23 F.2d 229, 232 (9th Cir. 1991).  "The inviolability of private

24 ownership has long been a fundamental principle of our nation's

25 jurisprudence.  *See Thatcher v. Powell*, 19 U.S. (6 Wheat) 119,

26 125, 5 L.Ed. 221 (1821).  In recognition of this principle,

27 Congress has imposed precise strictures on the seizure and sale

28 of an individual's property by the IRS to satisfy legitimate tax

11

deficiencies." *Aqua Bar & Lounge, Inc. v. U. S. Dept. of Treasury Internal Revenue*, 539 F.2d 935, 939 (3rd Cir. 1976). The Internal Revenue Code states the procedures for seeking a lien as a result of unpaid taxes after the IRS asserts the taxpayer has not paid their income taxes due.

First, the IRS mails the notice of deficiency by certified or registered mail. 26 U.S.C. § 6212(a); *Robinson*, 920 F.2d at 1158. "Upon determining a deficiency against a taxpayer, the IRS is authorized to send the taxpayer a notice of deficiency." *Elias*, 908 F.2d at 523. Once this notice has been mailed, the taxpayers have ninety days in which to file a petition for redetermination in the Tax Court, a jurisdictional prerequisite to a suit in the Tax Court. 26 U.S.C. § 6213. If the taxpayer files in the Tax Court within that period, no assessment, nor utilization of Court procedures for collection can be undertaken by the Internal Revenue Service until the Court makes a final decision. 26 U.S.C. § 6213(a).

Second, if no petition is filed in the Tax Court within the specified time by the taxpayer, the IRS can make an assessment. 26 U.S.C. § 6213(c). A duly designated official for the district or regional tax center signs the summary record of the assessment, which identifies the taxpayers, the type of tax owed, the taxable period and the amount of the assessment. 26 U.S.C. § 6203; Treas. Reg. § 301.6203-1. Third, 26 U.S.C. § 6303 provides that as soon as practicable and within sixty days after making the assessment, the IRS must issue a "notice and demand letter" to the taxpayers, specifying the amount due and demanding payment. Fourth, 26 U.S.C. § 6321 provides that the IRS may file

12

1   a lien against their property if the taxpayers do not pay after
2   demand.

3       Cabral maintains that the procedural flaws lie in his not
4   receiving the "ninety day" letter, or the notice of deficiency,
5   pursuant to 26 U.S.C. § 6212 and the "notice and demand letter"
6   pursuant to 26 U.S.C. § 6303.  The Code clearly states that "no
7   assessment of a deficiency ... and no levy or proceeding in court
8   for its collection shall be made, begun, or prosecuted until such
9   notice [of deficiency] has been mailed to the taxpayer, nor until
10  the expiration of such 90-day ... period." 26 U.S.C. § 6213(a).
11  "By providing an opportunity to litigate the merits of the
12  deficiency in the Tax Court without requiring payment of the full
13  amount allegedly owed, the statute provides substantial benefits
14  to taxpayers." *Robinson*, 920 F.2d at 1158.

15      Cabral's defense that he never received notice of
16  assessment, nor received the notice and demand, challenges the
17  procedural validity of the IRS's lien, because notice and demand
18  must be made on a taxpayer before a tax lien can attach to a tax
19  payer's property.  This raises a procedural invalidity of a
20  federal tax lien under § 2410.  *Elias v. Connett*, 908 F.2d 521
21  (9th Cir. 1990), holds that plaintiff's claim not to have been
22  sent a valid notice of assessment and demand for payment under 26
23  U.S.C. § 6303(a), challenges the procedural validity and supports
24  a section 2410 cause of action.  908 F.2d at 527-28.[7]  "The IRS

25

26      [7] Court found that Plaintiff was issued notices that
27  satisfied the requirements of 26 U.S.C. § 6303(a), therefore
    Plaintiff's allegations did not support his claim that the IRS's
28  lien was procedurally invalid.  908 F.2d at 528.

must send a notice of deficiency before it may assess, collect, or reduce to judgment most income tax liabilities. § 6213(a)." *U.S. v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984).  However, a "notice is valid even if not received by the taxpayer, if it is mailed to the taxpayer's last known address."  *Id.; Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982).

The United States argues in its Reply that Cabral received the requisite statutory notice and provides a declaration by Lauren Castaldi, a United States Attorney with the United States Department of Justice, Tax Division.  (Doc. 48, Reply, Castaldi Decl.)  Attached to Ms. Castaldi's declaration are Exhibits 1 – 3, copies of Form 4340, Certificate of Assessments, Payments and Other Specified Matters for John Cabral.  (*Id.* at Exhibits 1-3.) Ms. Castaldi states in her declaration that the exhibits of Forms 4340 indicate that Statutory Notices of Balance Due were issued on July 19, 2004, November 27, 2006, May 11, 1998, May 8, 2006, December 22, 1997 and May 8, 2006 for the various tax periods in which taxes were owed.  (Castaldi Decl., ¶¶ 2-4.)  IRS Form 4340 along with Form 3387 has been held in the Ninth Circuit as constituting valid evidence of a taxpayer's assessed liabilities and IRS's notice thereof.  *Hughes v. U.S.*, 953 F.2d 531, 535 (9th Cir. 1992)("The IRS submitted Certificates of Assessments and Payments (Form 4340) as proof that assessments had been made. Official certificates, such as Form 4340, can constitute proof of the fact that the assessments actually were made.")

Exhibit 1 is a Form 4340, Certificate of Assessment covering Civil Penalty for tax period ending <u>December 31, 1996</u>, with page 3 noting a "Statutory Notice of Balance Due" was issued on July

19, 2004 and November 27, 2006.  (*Id.* at Exhibit 1.)

Exhibit 2 is a Certificate of Assessment, Form 4340 covering Civil Penalty for tax period ending <u>December 31, 1997</u>, with page 2 indicating a "Statutory Notice of Balance Due" was issued on May 11, 1998 and May 8, 2006.  (*Id.* at Exhibit 2.)

Exhibit 3 is a Certificate of Assessment, Form 4340 covering Civil Penalty for tax period ending <u>September 30, 1997</u>, with page 3 indicating a "Statutory Notice of Balance Due" was issued on December 22, 1997 and May 8, 2006.  (*Id.* at Exhibit 3.)  The United States did not provide copies of "postal form 3877 certifying that the notices of deficiency had been mailed and an IRS form certifying that the taxes and the section 6651(a)(3) failure-to-pay penalties had been assessed."  *U.S. v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984) ("We adopt the view of the Eighth Circuit and the Tax Court that these official certificates [postal forms 3877] are highly probative, and are sufficient, in the absence of contrary evidence, to establish that the notices and assessments were properly made.")  Cabral has not raised this argument.  However, Plaintiff United States provided its Form 4340 for the first time in its Reply and Cabral did not have notice of this argument prior to filing its opposition.

The United States also argues that the section 2410 claim is insufficiently pled and Cabral admits this in his Complaint at paragraph 15: "Mr Cabral is unable at this time to satisfy the jurisdictional requirements of 28 U.S.C. § 2410, in that he does not have copies of the tax liens in question and cannot therefore state with specificity beyond that contained in the Complaint that nature of the tax liens filed, the office of the IRS that

1   filed them, or the date and place the notice of lien was filed."
2   (Doc. 27, Cabral Answer, ¶ 15).

3        Section 2410(b) requires a claim sought under it to "set
4   forth with particularity ... [1] the name and address of the
5   taxpayer whose liability created the lien and, [2] if a notice of
6   the tax lien was filed, [3] the identity of the internal revenue
7   office which filed the notice, and [4] the date and place such
8   notice of lien was filed.  28 U.S.C. § 2410(b).  Defendant argues
9   the claim should be dismissed on the ground that the Cabral fails
10  to allege facts with specificity as required by the statute.  A
11  valid waiver of sovereign immunity is unflinchingly strict.  A
12  statute setting forth a waiver must be construed strictly in
13  favor of the sovereign.  *Department of Army v. Blue Fox, Inc.*,
14  525 U.S. 255, 261 (1999).

15       The United States' motion to dismiss Cabral's section 2410
16  claim as to allegations that liability should be borne by Co-
17  Defendant Janet Cabral is GRANTED without leave to amend.

18       The United States' motion to dismiss Cabral's section 2410
19  claim as to alleged procedural flaws is GRANTED with leave to
20  amend.

21       2.  Section 7426 Claim

22       Title 26 U.S.C. § 7426(a)(1) provides that "any person
23  (other than the person against whom is assessed the tax out of
24  which such levy arose) who claims an interest in or lien on such
25  property and that such property was wrongfully levied upon may
26  bring a civil action against the United States..."  26 U.S.C. §
27  7426 (a)(1).  There are three prerequisites to establish a § 7426
28  waiver:

1

2

3

4

5

6

7

8

9

> **1.   The person must not be one against whom is assessed the tax;**
>
> **2.   The person must claim a legally cognizable interest in the property; and**
>
> **3.   The property must have been wrongfully levied upon.**

*Arford v. U.S.*, 934 F.2d 229, 232 (9th Cir. 1991).   Waiver of the United States' sovereign immunity under § 7426 authorizing wrongful levy actions must be construed strictly in favor of the government.   *See Sessler v. United States*, 7 F.3d 1449, 1451–52 (9th Cir. 1993).

The United States argues that the statute does not provide Cabral, as a potentially liable taxpayer, the means by which to challenge an assessment.   An "assessment cannot be challenged in a § 7426 action."   *First American Title Ins. Co. v. United States*, 520 F.3d 1051, 1054 (9th Cir. 2008).   The statute provides standing for third parties that have an interest in a levied property, but excludes from those authorized to bring a wrongful levy action, the taxpayer against whom the IRS seeks to collect taxes.   26 U.S.C. § 7426(a)(1); *Shannon v. United States*, 521 F.2d 56, 59 (9th Cir. 1975).   Cabral is the person against whom the tax assessed.   He is not a third party.   Presumably Cabral and his wife jointly own the property as joint tenants.

Cabral in response argues he is not challenging the validity of the assessment.   However the contention that the levy should be against the property of his wife, who is the person he alleges is actually responsible for the tax debt is a challenge of the assessment.   Cabral cites no case law or legal authority that provides for his assertion that an "innocent spouse" defense provides standing.

17

1        The United States' motion to dismiss Cabral's section 7426

2    claim is GRANTED with leave to amend.

3    B.   FTB's and EDD's Motion to Dismiss

4        Both FTB and EDD, are Co-Defendants appearing in this suit

5    to request priority to tax liens they recorded against Cabral.[8]

6    FTB and EDD jointly move to dismiss for lack of subject matter

7    jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) Cabral's

8    crossclaims brought pursuant to Fed R. Civ. Proc. 13(g).   FTB and

9    EDD allege lack of jurisdiction.   Cabral brings two crossclaims

10   against FTB and EDD, (1) wrongful lien under 28 U.S.C. § 2410

11   (Count One) and (2) wrongful levy under 26 U.S.C. § 7426(a)

12   (Count Two).

13       FTB and EDD refer to the Tax Injunction Act, as barring this

14   dispute.   The Tax Injunction Act, 28 U.S.C. § 1341, limits a

15   district court's ability to enjoin, suspend or restrain an

16   assessment, levy or collection of any tax under State law if a

17   plain, speedy and efficient remedy can be had in the court of

18   California:

19              The district courts shall not enjoin, suspend or
               restrain the assessment, levy or collection of any tax
20              under State law where a plain, speedy and efficient
               remedy may be had in the courts of such State.
21

22   28 U.S.C. § 1341.[9]   As stated in the Ninth Circuit court case of

23   _____

24       [8] **Paragraph 12 of FTB's Answer to the Complaint lists the
     statutory liens of the IRS, FTB and EDD in order of assessment
25   date.   The parties, according to FTB's Answer "have an agreement
     to compare statutory lien dates to determine priority for payment
26   on completing liens."   (Doc. 18, FTB Answer, ¶ 12.)**

27       [9] **"Succinctly put, the state remedy is 'plain' as long as
     the remedy is not uncertain or unclear from the outset; 'speedy'**

28

                                   18

*Jerron West, Inc. v. State of Cal. State Bd. of Equalization*, 129 F.3d 1334 (9th Cir. 1997): The primary purpose of the Tax Injunction Act "is to prevent federal court intrusion into state tax collection, an area which deserves the utmost comity to state law and procedure."  129 F.3d at 1338.[10]  The Act is "first and foremost a vehicle 'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.'"  *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 826 (1997).  The exception to this is "where the state does not provide the Taxpayers with an adequate state remedy."  *Jerron,* 129 F.3d at 1337.

FTB alleges in its Answer that it holds valid state tax liens filed, pursuant to section 7171 of the Government Code, and recorded in Stanislaus County, in 1998, 1999 and 2002.  (Doc. 18, FTB Answer, ¶ 10).  FTB further states: "Section 19221 of the Revenue and Taxation Code provides that if a tax liability is not paid at the time that it becomes due and payable, a perfected and enforceable state tax lien is created for the amount of the tax liability."  (*Id.* at ¶ 11)  EDD alleges in its Answer that it "holds a valid state tax lien pursuant to section 7171 of the Government Code" against all real or personal property belonging

---

if it does not entail a significantly greater delay than a corresponding federal procedure; and 'efficient' if the pursuit of it does not generate ineffectual activity or unnecessary expenditures of time or energy."  *U.S. West, Inc. v. Nelson*, 146 F.3d 718, 724-25 (9th Cir. 1998)

[10] "[T]he Act applies to actions for damages or refunds despite the absence of explicit language because federal jurisdiction over state refund actions would 'readily circumvent' the Act."  *Id.*

to Cabral for unpaid tax, interest, and penalties imposed upon Cabral under the provisions of the California Unemployment Insurance Code for the 1998 and 1999 tax year.  (*Id.* at ¶ 10).  EDD states that "Section 1703 of the Unemployment Insurance Code provides that if a tax liability is not paid at the time that it becomes due and payable, a perfected and enforceable state tax lien is created for the amount of the tax liability."  (*Id.* at ¶ 12).

FTB and EDD argue that Taxpayers are not entitled to judicial review of their state income tax liabilities until after they pay the tax in question and pursue an administrative claim for a tax refund.  California Revenue and Tax Code, § 19382 states:

> Except as provided in Section 19385, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid.

Cal. Rev. & Tax Code § 19382.  California cedes to the "pay now, litigate later" rule in tax cases; a taxpayer may not obtain judicial review of the validity of a tax which is due but has not been paid.  *Sahadi v. Scheaffer*, 155 Cal.App.4th 704, 734, 66 Cal.Rptr.3d 517,(2007), *review denied*.  The "pay now, litigate later rule" requires a taxpayer to pay the disputed tax first, and then sue for a refund, rather than permitting the taxpayer to delay payment while the validity of the tax assessment is litigated.  *Flying Dutchman Park, Inc. v. City and County of San Francisco*, 113 Cal.Rptr.2d 690, 692, 93 Cal.App.4th 1129 (2001),

*as modified, review denied.*

FTB and EDD also cite California Constitution, Article XIII, section 15, which states:

> No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature.

Cal. Const., art. XIII, § 32.; *Flying Dutchman Park, Inc. v. City and County of San Francisco*, 93 Cal.App.4th 1129, 1136, 113 Cal.Rptr.2d 690 (2001)("Article XIII, section 32 of the California Constitution restricts a taxpayer's remedy to a postpayment refund action."); *Modern Barber Colleges v. California Employ. St. Com'n*, 31 Cal.2d 720, 192 P.2d 916 (1948) (same is true of unemployment insurance contributions).

FTB and EDD also cite *California v. Grace Brethen Church et al.*, 457 U.S. 393, 394 (1982), which holds that state procedures for seeking refund of state unemployment insurance taxes provide an adequate remedy within meaning of the Tax Injunction Act for plaintiff who was seeking to challenge the constitutionality of unemployment insurance statute in its applicability to religious schools (on First Amendment grounds). Congress has "expressed some concern regarding the increased costs that states would bear if forced to defend the imposition of state taxes in federal, rather than state, courts." *May Trucking Co. v. Oregon Dept. of Transp.*, 388 F.3d 1261, 1266 (9th Cir. 2004)*, citing* 81 Cong. Rec. 1416 (1937). "As the Supreme Court recently explained, the [Tax Injunction] Act had two closely related, state-revenue-protective objectives: (1) to eliminate disparities

between taxpayers who could seek injunctive relief in federal court--usually out-of-state corporations asserting diversity jurisdiction--and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances." *Id.*, *citing, Hibbs v. Winn*, 542 U.S. 88, 124 (2004).

Cabral has not paid his California taxes nor filed a claim for a refund, which is a prerequisite to challenging state tax assessments in court. *Flying Dutchman Park, Inc.*, 93 Cal.App.4th at 1135-36. Cabral has also not addressed FTB's and EDD's argument that California provides an adequate means by which he may challenge an assessment of state taxes by paying the disputed tax and seeking a refund in state court. *Grace Brethen Church,* 457 U.S. at 417 (Appellees could seek a refund of unemployment insurance taxes and then seek review under state law and thus this was "plain, speedy and efficient" within the meaning of the Tax Injunction Act; the District Court had no jurisdiction to issue injunctive or declaratory relief); *see also Modern Barber Colleges, Inc.*, 31 Cal.2d 720, 192 P.2d 916 (1948).

Cabral merely asserts without citing any case law, that he is not challenging the tax assessment but is asserting he never received a Notice of Proposed Assessment for his California Taxes and Notice of Assessment for his unemployment insurance contributions, thereby alleging he is only challenging the procedure. For purposes of the Tax Injunction Act and the principle of comity, the counterclaims by Cabral for relief from

state taxes are barred from assertion in federal court, "because such relief would intrude upon and disrupt a state's enforcement of its tax system." *Jerron West, Inc.,* 129 F.3d at 1338.

FTB's and EDD's motion to dismiss Cabral's crossclaims pursuant to Fed. R. Civ. P. 12(b)(1) is GRANTED with leave to amend.

## CONCLUSION

For the reasons stated above,

Plaintiff United States' motion to dismiss Defendant Cabral's section 2410 claim as to allegations that liability should be borne by Co-Defendant Janet M. Cabral is GRANTED without leave to amend.  The United States' motion to dismiss Defendant Cabral's section 2410 claim as to alleged procedural flaws is GRANTED with leave to amend.

Plaintiff United States' motion to dismiss Defendant Cabral's section 7426 claim is GRANTED with leave to amend.

Co-Defendant EDD's and FTB's Motion to Dismiss for lack of jurisdiction Co-Defendant Cabral's crossclaims is GRANTED with leave to amend.

Any amended crossclaims and counterclaims shall be filed within twenty (20) days following the date of service of this memorandum decision and order by the clerk of the court.

IT IS SO ORDERED.

Dated:    **August 13, 2008**                    **/s/ Oliver W. Wanger**
                                            UNITED STATES DISTRICT JUDGE