1
2
3
4                    UNITED STATES DISTRICT COURT
5                    EASTERN DISTRICT OF CALIFORNIA
6
7    UNITED STATES OF AMERICA,        1:07-CV-01741-OWW-DLB
8                     Plaintiff,      MEMORANDUM DECISION GRANTING
                                      PLAINTIFF UNITED STATES'
9                                     MOTION FOR SUMMARY JUDGMENT
                                      AND REQUEST FOR ENTRY OF
10        v.                          DEFAULT JUDGMENT (Doc. 90)
11   JOHN L CABRAL, *et al.,*
12
13                     Defendants.
14
15                      I.   INTRODUCTION
16        Before the court for decision are Plaintiff's unopposed Motion
     for Summary Judgment and Motion for Entry of Default Judgment.  The
17   Plaintiff served the motions on all parties on March 20, 2009.  To
18   date, no party has filed a response to the motions.
19        Plaintiff, the United States, moves for summary judgment
20   against Defendants John Cabral and Janet M. Cabral ("the Cabrals"),
21   seeking to reduce to judgment certain federal tax assessments, to
22   foreclose federal tax liens on real property owned jointly by John
23   Cabral and Janet M. Cabral, and to obtain an order forcing the sale
24   of the property to satisfy the liens.
25        In addition to reducing to judgment the tax liabilities
26   assessed against John Cabral and Janet M. Cabral, Plaintiff seeks
27   a default judgment against National Credit Acceptance, Inc.
28

                              1

("NCAI"), the County of Merced, and Discover Bank to extinguish any interest in the real property at issue, or in the proceeds from the sale of the real property at issue.

## II.   BACKGROUND

### A.   Factual Background

#### 1. The Cabrals' Business

The Cabrals, husband and wife since 1980, owned and operated a hay and whay transportation business in Turlock, California between 1990 and 1997.  (SUF ¶¶ 1-2, 6.)  The business generated revenues exceeding hundreds of thousands of dollars each year. (SUF ¶¶ 2, 6.)  IRS records indicate that the Cabrals filed income tax returns between 1990 and 1995, but failed to file returns for 1996 and 1997. (SUF ¶ 16.)

#### 2.   IRS Involvement & Investigation

The Internal Revenue Service (the "IRS") obtained bank records for the Cabrals' bank accounts at the Bank of Stockton through the issuance of an IRS summons.  (SUF ¶ 7.)  The Cabrals were notified of the examination, but John Cabral refused to cooperate with the exam.  (SUF ¶ 8.)   Janet Cabral provided little cooperation and failed to provide the IRS with any records substantiating the Cabrals' income or expenses for 1996.  (SUF ¶ 9.)

Because John Cabral did not cooperate in the calculation of his income for 1996, the IRS reconstructed his income using the bank deposit method and specific identification of items of income. (SUF ¶ 10.)  Under the bank deposit method, income is estimated on the basis of the total bank deposit, the underlying premise being

2

that deposits represent taxable income unless otherwise explained as being nontaxable items.  (SUF ¶ 11.) The IRS agent's examination resulted in a determination that Cabral's community property share of federal income tax liability for 1996 was $703,126.00 and that Janet M. Cabral's share was $627,338.00 (SUF ¶ 12-13.)   The IRS assessed penalties against the Cabrals for 1996 pursuant to 28 USC 6651(a)(1) and were based on the Cabrals' failure to timely file proper federal income tax returns. (SUF ¶ 14.)

### 3.   The Cabrals' Tax Liabilities

IRS records indicate that the Cabrals filed income tax returns between 1990 and 1995, but failed to file returns for 1996 and 1997.  (SUF ¶ 16.)   IRS records indicate that the Cabrals were audited in 1996 and that the IRS later assessed substantial tax liabilities against each of them.  (SUF ¶ 17.)   According to the assessments (known as "Form 4340's"), John Cabral accrued over $703,126.00 in 1996.   (SUF ¶ 17.) Janet Cabral accrued over $627,338.00.  (SUF ¶ 18.)

IRS records indicate that John Cabral filed "Employer's Quarterly Federal Tax Returns" for the periods ending in September 30, 1997 and December 31, 1997.[1]  (SUF ¶ 19.)  IRS records indicate that John Cabral reported a liability for federal payroll taxes in the amount of $5,703.51 for the quarter ending September 30, 1997 and $7,761.66 for the quarter ending December 31, 2007. (SUF ¶ 20-21.)

---

[1] These returns were filed on October 31, 1997 and March 22, 1998, respectively.  (SUF ¶ 19.)

1    For the taxable year ending December 31, 1996, John Cabral's
2    current balance due for individual federal income tax, including
3    penalties and interest, accrued to March 1, 2009, is $2,191,166.44.
4    (SUF ¶ 22.)  For the taxable year ending December 31, 1996, Janet
5    Cabral's current balance due for individual federal income tax,
6    including penalties and interest, accrued to March 1, 2009, is
7    $1,934,207.52.  (SUF ¶ 24.)  John Cabral's current balance due for
8    federal payroll taxes for the quarters ending September 30, 1997
9    and December 31, 1997, including penalties and interest accrued to
10   March 1, 2009, is $10,909.96.  (SUF ¶ 23.)

11

12   **4.   Real Property at Issue**

13   The subject real property is located in Stanislaus County at
14   3500 South Walnut Road, Turlock, California and 3509 South
15   Soderquist Road, Turlock, California. (SUF ¶ 25.)   The Cabrals
16   jointly hold title to the two parcels of real property, acquired on
17   April 29, 1993 and recorded in Stanislaus County on May 17, 1993.
18   (SUF ¶ 26.)   John Cabral, allegedly separated from his wife,
19   resides at 3500 South Walnut Road, Turlock, California 95380, which
20   contains three small residences.   (SUF ¶ 27.)   Janet M. Cabral
21   resides in a separate residence at the same address. (SUF ¶ 30.)

22   The IRS filed notices of federal tax lien against John Cabral
23   and Janet M. Cabral with the Stanislaus County Recorder on December
24   31, 1996, September 30, 1997, and December 31, 2007.  (SUF ¶ 28.)
25   The IRS investigated the extent of other creditor's liens on the
26   property and estimated the total forced-sale value of the
27   properties at $520,000.00, with government netting $242,000 after
28   payment to senior creditors.   (SUF ¶ 29.)

**4**

1

**5.   <u>Third Party Interests in Real Property</u>**

**Franchise Tax Board (FTB"), Economic Development Department ("EDD"), C.L. Bryant, Inc., and the San Joaquin Valley Hay Growers Association each have interests in the subject property.   These parties and Plaintiff have entered into a Stipulation regarding lien priorities.   (Docket Nos. 59-60.)   NCAI, the County of Merced, and Discover Bank purportedly have interests in this property but have failed to respond to the Plaintiff's complaint or otherwise appear.**

**B.   <u>Procedural Background</u>**

**The United States filed a complaint on November 30, 2007, pursuant to 26 U.S.C. §§ 7401, 7403, to reduce to judgment outstanding federal tax assessments against John Cabral and Janet M. Cabral, and to foreclose federal tax liens arising from federal tax liabilities against two parcels of property owned by the Cabrals, located in Stanislaus County.   (Doc. 1, Complaint, at ¶¶ 2, 3.)**

**In its first cause of action, the United States seeks to reduce to judgment the amount outstanding against John Cabral.[2] (*Id.* at ¶ 15.)   Plaintiff seeks the same recovery from Defendant Janet M. Cabral in its second cause of action.[3]   (*Id.* at ¶¶ 16-19.) In its third cause of action, the United States seeks to foreclose its alleged federal tax lien on the parcels of real property.   (*Id.***

_____

[2] **As of March 1, 2009, the balance for the 1996 tax year is $2,191,166.44.   As of March 1, 2009, the balance for the quarters ending September 30, 1997 and December 31, 1997 is $10,909.96.**

[3] **As of March 1, 2009, the total balance is $1,934,207.52.**

5

Case 1:07-cv-01741-OWW-DLB   Document 98   Filed 06/04/09   Page 6 of 16

at ¶23.)

FTB, EDD, C.L. Bryant, Inc., San Joaquin Valley Hay Growers Association, NCAI, the County of Merced, and Discover Bank are named as Defendants in the suit because the United States asserts they may claim an interest in the property against which the United States seeks to foreclose its tax liens. (*Id.* at ¶10.)

On May 12, 2008, John Cabral filed an Answer and alleged two counterclaims/ cross claims against the United States and FTB/EDD for (1) wrongful lien under 28 U.S.C. § 2410, (Doc. 27 at ¶¶ 6-15); and (2) wrongful levy under 26 U.S.C. § 7426(a), (*Id.* at ¶¶ 16-19). The United States and FTB/EDD moved to dismiss Cabral's counterclaims/ cross claims. (Docs. 29 at 41.) Both motions were granted on August 14, 2008, although John Cabral was permitted leave to amend. (Doc. 50.)

On May 30, 2008, the United States moved, pursuant to Federal Rule 55(a), to enter default against Defendants National Credit Acceptance, Inc., the County of Merced, and Discover Bank. (Doc. 36.) The court clerk entered the defaults of National Credit Acceptance, Inc., the County of Merced, and Discover Bank on June 6, 2008. (Doc. 40.)

On August 26, 2008, Cabral filed an Amended Answer, which contained amended counterclaims/ cross claims against the United States and FTB/EDD.[4] (Doc. 53.) The United States and FTB/EDD again moved to dismiss. (Docs. 54 and 57.) Both motions were

---

[4] Cabral filed counterclaims/ cross claims against the United States and FTB/EDD for (1) wrongful lien under 28 U.S.C. § 2410, (Doc. 27 at ¶¶ 6-15); and (2) wrongful levy under 26 U.S.C. § 7426(a), (*Id.* at ¶¶ 16-19).

6

granted with prejudice on November 14, 2008.  (Doc. 76.)

On October 9, 2008, FTB, EDD, C.L. Bryant, Inc., and the San Joaquin Valley Hay Growers Association entered into a Stipulation regarding their lien priorities.  (Docket Nos. 59-60.)

On December 9, 2008, Janet M. Cabral filed her answer to Plaintiff's complaint.  (Doc. 84.)

On March 20, 2009, the United States moved for summary judgment to reduce to judgment outstanding federal tax assessments against Defendants John Cabral and Janet Cabral, and to foreclose federal tax liens arising from federal tax liabilities against two parcels of property owned by them, located in Stanislaus County. (Doc. 90.)   Plaintiff also moved for a default judgment against NCAI, the County of Merced, and Discover Bank.  (*Id.*)

As of May 29, 2009, no party has filed a response to the motions.

### III.  <u>STANDARDS OF DECISION</u>

A.  <u>Motion for Summary Judgment</u>.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

1   *Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks
2   omitted).

3       Where the movant will have the burden of proof on an issue at
4   trial, it must "affirmatively demonstrate that no reasonable trier
5   of fact could find other than for the moving party." *Soremekun v.*
6   *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also*
7   *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir.
8   2003) (noting that a party moving for summary judgment on claim as
9   to which it will have the burden at trial "must establish beyond
10  controversy every essential element" of the claim) (internal
11  quotation marks omitted). When a motion for summary judgment is
12  properly made and supported, the non-movant cannot defeat the
13  motion by resting upon the allegations or denials of its own
14  pleading, rather the "non-moving party must set forth, by affidavit
15  or as otherwise provided in Rule 56, 'specific facts showing that
16  there is a genuine issue for trial.'" *Id.* (*quoting Anderson v.*
17  *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).   "Conclusory,
18  speculative   testimony   in   affidavits   and   moving   papers   is
19  insufficient to raise genuine issues of fact and defeat summary
20  judgment." *Id.*

21      To defeat a motion for summary judgment, the non-moving party
22  must show there exists a *genuine* dispute (or issue) of *material*
23  fact.   A fact is "material" if it "might affect the outcome of the
24  suit under the governing law."   *Anderson*, 477 U.S. at 248.
25  "[S]ummary judgment will not lie if [a] dispute about a material
26  fact is 'genuine,' that is, if the evidence is such that a
27  reasonable jury could return a verdict for the nonmoving party."
28  *Id.* at 248.   In ruling on a motion for summary judgment, the

**8**

district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Where "the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e.  Thus, summary judgment, even when unopposed, can only be entered when "appropriate."

## IV.  <u>DISCUSSION</u>

A.  <u>The United States' Unopposed Summary Judgment Motion</u>.

The United States moves for summary judgment against John Cabral and Janet M. Cabral for the assessments of unpaid taxes and penalties for the 1996 income tax year.  The United States also moves for summary judgment against John Cabral as to his liabilities for federal trust fund taxes for the third and fourth quarters of the 1997 tax year.

"In an action to collect federal taxes, the government bears the initial burden of proof." *In re Olshan*, 356 F.3d 1078, 1084 (9th Cir. 2004) (*quoting Palmer v. I.R.S.*, 116 F.3d 1309, 1312 (9th Cir. 1997)). The government's burden can be met by presenting federal tax assessments.  *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983).  Certificates of Assessments and Payments ("Form 4340s") are highly probative and in the absence of contrary evidence, are sufficient to establish a tax assessment was properly made and notice and demand for payment were sent.  *See Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993) ("Generally, courts have held that IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed ....");

9

*Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) ("Official certificates, such as Form 4340, can constitute proof of the fact that the [tax] assessments were actually made.").

When supported by a minimal factual foundation, the IRS' assessments for taxes and related penalties are entitled to a presumption of correctness and the burden shifts to the taxpayer to show the assessment is incorrect. *See In re Olshan*, 356 F.3d at 1084; *Palmer*, 116 F.3d at 1312. If the taxpayer fails to rebut the presumption, the government is entitled to judgment as a matter of law. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (finding taxpayers' declaration that they did not receive notice of the tax assessment was insufficient to show a genuine issue of fact for trial where IRS presented Form 4340).

The United States has submitted Form 4340s calculating John Cabral's tax liability and the related penalties for 1996 and 1997 tax years and Janet M. Cabral's tax liability and related penalties for 1996, (see Dec. Of A. Reese, Exh. R-1 to R-7), along with Laverty's Declaration supporting those assessments. (Dec. of P. Laverty ¶¶ 1-13.) In further support of the assessments, the United States has submitted bank account records and associated documents. *(Id.*; Exh. A to C-2 of Dec. of P. Laferty.) Because the United States' showing exceeds the minimal factual foundation necessary, the assessments receive a presumption of correctness and the burden of proof shifts to John Cabral and Janet M. Cabral to demonstrate any error.

Neither John Cabral nor Janet M. Cabral, however, have submitted any evidence that there are deficiencies in the United States' Form 4340s. In his discovery responses, John Cabral

10

conclusorily denied knowledge of any bank accounts and stated that "Janet managed the business and provided me with no records." (See Aug. 28, 2008 Responses, Exh. B to Dec. of A. Bailey.)  He then repeatedly refused to allow the government to depose him.[5]  (Pl.'s Mot. Pg. 6-7; Dec. of A. Bailey ¶ 8.)  Janet M. Cabral, by failing to answer the United States' First Set of Admissions, has admitted that she owes taxes and penalties in the exact amounts stated in the IRS' assessments.  (See Exh. D to Dec. of A. Bailey; Dec. of Bailey ¶¶ 5-7.)  Because the John Cabral and Janet Cabral fail to identify any facts to rebut the legitimacy of the 4340s, the only permissible inference is that the 1996 and 1997 assessments of their tax liability are valid as a matter of law. *See Adams*, 358 F.2d at 994.

While recognizing that the court must read the facts in the light most favorable to the non-movant, neither defendant offered any facts refuting the United States' evidence.  As there is no genuine issue of material fact for trial, the assessments of John Cabral's tax liability and penalties for 1996  and 1997 are correct as a matter of law.  The assessments of Janet M. Cabral's tax liability and penalties for 1996 are correct as a matter of law

Plaintiff's Motion for Summary Judgment against John Cabral for the federal tax assessments made against him for 1996 and 1997 is GRANTED.  Plaintiff's Motion for Summary Judgment against Janet M. Cabral for the federal tax assessments made against her for 1996 is

---

[5] See November 26, 2008 Order Granting Plaintiff's Motion to Compel Deposition. (Doc. 78.)

1 **GRANTED.**[6]

2     **B.   Motion for a Default Judgment**

3     **The United States moves for default judgments against NCAI, the**
4 **County of Merced, and Discover Bank to extinguish any interest in**
5 **the real property at issue, or the proceeds from the sale of the**
6 **real property at issue.**

7     **Granting a motion for default judgment is within the Court's**
8 **discretion pursuant to Rule 55(b)(2).  *Eitel v. McCool*, 782 F.2d**
9 **1470, 1471 (9th Cir. 1986); *Yew v. Dulles*, 236 F.2d 415, 416 (9th**
10 **Cir. 1956).  The following factors apply: "(1) the possibility of**
11 **prejudice to the plaintiff; (2) the merits of plaintiff's**
12 **substantive claim; (3) the sufficiency of the complaint; (4) the sum**
13 **of money at stake in the action; (5) the possibility of a dispute**
14 **concerning material facts; (6) whether the default was due to**
15 **excusable neglect, and (7) the strong policy underlying the Federal**
16 **Rules of Civil Procedure**

17     **Here, the following circumstances support a default judgment:**
18 **1) The United States has been authorized to institute this action**
19 **by the IRS to collect the Cabrals' outstanding federal income tax**

20

21     [6] Pursuant to 26 U.S.C. §§ 6601(a) and (e)(2)(A), 6621, and
22 6622, the United States is entitled to statutory interest on
income taxes and associated penalties imposed as of the date of
23 notice and demand, which accrues daily until paid in full.  *See*
*Purcell v. United States*, 1 F.3d 932, 943 (9th Cir. 1993).  Once
24 a court validates a tax assessment, awarding statutory interest
is mandatory. *See id*. (noting that § 6601(e)(2)(A) is a "binding
25 statutory directive" to award interest).  Thus, the court GRANTS
summary judgment with respect to the statutory interest on the
26 tax assessments and penalties described above and ORDERS that
judgment be entered against John Cabral and Janet Cabral for
27 those income tax liabilities and associated penalties plus
statutory interest.
28

liabilities and named NCAI, the County of Merced, and Discover Bank as parties pursuant to U.S.C. 7403(a)-(c); 2) NCAI, the County of Merced, and Discover Bank were served with the complaint on November 30, 2007; 3) NCAI, the County of Merced, and Discover Bank have failed to file an answer to the United States' Complaint, which was properly served; 4) On June 6, 2008, the Clerk of Court entered defaults against NCAI, the County of Merced, and Discover Bank; 5) notice of this motion has been served upon NCAI, the County of Merced, and Discover Bank, but have yet to file a response.

Further, absent a default judgment, the sale of the subject property likely would be negatively affected as it would remain encumbered by the liens of NCAI, the County of Merced, and Discover Bank.  This could prejudice the United States' efforts to satisfy the Cabrals' tax liabilities.  The United States does not seek any monetary damages from NCAI, the County of Merced, or Discover Bank; rather, the United States seeks to extinguish their liens - if any remain - against the Cabrals only to the extent that they relate to the real property at issue in this case.  The amount forming the basis for the lien would not be eliminated.

All the *Eitel* factors favor entry of default judgment, save the preference for disposition of disputed on the merits. *Eitel*, 782 F.2d at 1471-72.  The United States' motion for entry of default judgment is GRANTED.


C.   Judicial Sale

Pursuant to 26 U.S.C. § 7403, the United States may enforce a lien by commencing an action in the district court, joining all parties with an interest in the property, and obtaining a judicial

13

1 sale of the property.  See *United States v. Rodgers*, 461 U.S. 677,

2 691-92, 103 S. Ct. 2132, 76 L. Ed. 2d 236 (1983) (stating that §

3 7403 grants the power to a federal district court to order the sale

4 of a delinquent taxpayer's home); *In re Pletz*, 221 F.3d at 1118.

5     Section 7403(c) states, in pertinent part, that

6         [t]he court shall, after the parties have been duly
notified of the action, proceed to adjudicate all matters

7 involved therein and finally determine the merits of all
claims to and liens upon the property, and, in all cases

8 where a claim or interest of the United States therein is
established, may decree a sale of such property, by the

9 proper officer of the court, and a distribution of the
proceeds of such sale according to the findings of the

10 court in respect to the interests of the parties and of
the United States.

11

12     Here, federal tax assessments have been made against John

13 Cabral and Janet Cabral during the 1996 tax year and against John

14 Cabral during the third and fourth quarters of the 1997 tax year.

15 Pursuant to sections 6321 and 6322 of the Internal Revenue Code

16 ("IRC"), when John Cabral and Janet M. Cabral neglected or refused

17 to pay their assessed federal tax liabilities after notice and

18 demand for payment, federal tax liens arose on all property and

19 rights to property belonging to them.[7]  Federal tax liens arise at

20 assessment and continue until the liability for the amount assessed

21 (or a judgment against the taxpayer arising out of such liability)

22 is satisfied or becomes unenforceable by reason of lapse of time.

23 26 U.S.C. §§ 6322, 6502(a)(1).  Because John Cabral and Janet M.

24 Cabral have not paid their assessed tax liabilities, the federal tax

25 liens continue to encumber all their property, including the

26 _____

27     [7] The United States issued Notice of Federal Tax Liens for
each liability and the liens were subsequently filed with the

28 Stanislaus County Recorder.

14

1  property located in Stanislaus County.

2      The United States has provided evidence that it has no other
3  means of recovering any of the Cabrals' unpaid tax liability other
4  than foreclosing on their property.  (Dec. of A. Reese §§ 7, 19,
5  noting that John Cabral has not filed income tax returns since 1995,
6  John Cabral has no levy source, and that Janet Cabral's wages are
7  insufficient.)  Neither John Cabral nor Janet M. Cabral present any
8  evidence or authority to prevent the Government from foreclosing on
9  its liens.  The United States has provided the Cabrals with notice
10 and an opportunity to be heard, and the court has now fully
11 adjudicated the merits of the United States' tax claim.

12     The United States is entitled to foreclose the federal tax
13 liens against John Cabral and Janet M. Cabral and sell the property
14 located at 3500 South Walnut Road, Turlock, California and 3509
15 South Soderquist Road, Turlock, California.

16
17
18                     V.   CONCLUSION

19     For the foregoing reasons:

20     (1) Defendant John Cabral is indebted to the United States for
21 unpaid federal income tax liabilities for the tax year 1996 in the
22 amount of $2,191,166.44 as of March 1, 2009, plus further interest
23 and statutory additions as allowed by law;

24     (2) Defendant John Cabral is indebted to the United States for
25 unpaid federal income tax liabilities for the quarters ending
26 September 30, 1997 and December 31, 1997 in the amount of $10,909.96
27 as of March 1, 2009, plus further interest and statutory additions
28 as allowed by law;

                              15

1      **(3) Defendant Janet M. Cabral is indebted to the United States**

2  **for unpaid federal income tax liabilities for the tax year 1996 in**

3  **the amount of $1,934,207.52 as of March 1, 2009, plus further**

4  **interest and statutory additions as allowed by law;**

5      **(4) the federal tax liens, notice of which have been filed in**

6  **the public records of Stanislaus County, California, attach to all**

7  **property and to rights to property of John Cabral and Janet M.**

8  **Cabral, including the real property located at 3500 South Walnut**

9  **Road, Turlock, California and 3509 South Soderquist Road, Turlock,**

10  **California;**

11      **(5) default judgment is entered against NCAI, the County of**

12  **Merced, and Discover Bank;**

13      **(6) the federal tax liens of the United States upon the real**

14  **property of Defendants John Cabral and Janet M. Cabral, including**

15  **the real property located at 3500 South Walnut Road, Turlock,**

16  **California 95380 and 3509 South Soderquist Road, Turlock, California**

17  **95380, shall be foreclosed and sold; and**

18      **(7) the proceeds of the sale shall be distributed in accordance**

19  **with the stipulation filed on October 9, 2008 between the United**

20  **States and lien holders FTB, EDD, C.L. Bryant, Inc., and the San**

21  **Joaquin Valley Hay Growers Association.**

22

23  IT IS SO ORDERED.

24  **Dated:   June 3, 2009**                  **/s/ Oliver W. Wanger**
                                       UNITED STATES DISTRICT JUDGE

25

26

27

28